IN THE DISTRICT COURT OF THE UNITED STATES

DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Timothy Green, ) | |
| ) | Civil Action No. 6:14-2595-MGL-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Lt. Franklin Richardson, Jr., ) | |
| Nurse Pratt, Nurse Practitioner Rabon, ) | |
| Nurse Franklin, Nurse Moody, Nurse ) | |
| Karen Cooper, Ofc. Thompson, ) | |
| Sgt. Price, Ofc. Cain, Lt. Jenkins, ) | |
| Ofc. Farmer, Ofc. Mickens, ) | |
| Sgt. Demayrie, Nurse Jones, ) | |
| Medical Management Company, and ) | |
| Head Doctor, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

The defendants filed a motion for summary judgment (doc. 55) on January 21, 2015. By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed a response in opposition to the motion for summary judgment on March 23, 2015 (doc. 70).

**FACTS PRESENTED**

The plaintiff is currently incarcerated in the Broad River Correctional Institution in the South Carolina Department of Corrections ("SCDC"). At all times relevant to the plaintiff's complaint, the plaintiff was an inmate in Lee Correctional Institution. All of the named individual defendants are employees of the SCDC (doc. 25, answer ¶ 7).

*Plaintiff's Allegations*

The plaintiff asserts that "on or about the 3/19/10, I was in the Chesterfield Unit trying to change the conditions we were in at Lee Correctional Institute" (doc. 1, comp. at 3). The plaintiff asserts he went on a hunger strike for "19 days no food and water" and "that's the day Lt. Richardson, Jr., came on the Rock . . . he saw me standing in the doorway tell him to serve the food" (*id.* at 4). The plaintiff claims Lt. Richardson "came running up the stairs and I put the flap up on the door. I knew he was going spray the gas" (*id.*). The plaintiff claims that when Lt. Richardson saw the flap up on the door, "he didn't know what to do. He told me to pack my stuff and I was going to lockup" (*id.*). The plaintiff claims Richardson "put [him] in handcuffs" (*id.*). The plaintiff alleges that on his way to lockup he "asked to speak to the investigator." The plaintiff asserts he placed his radio in his pants because he was concerned it would be stolen while he was in lockup, and "they found it and took it" (*id.* at 5).

The plaintiff states that he was then put in a holding cell. While there, he alleges that he told Lt. Richardson, "[Y]ou think that you are better than everyone else. And you was nothing but an ex stripper" (*id.*). While he was "talking to [Lt. Richardson] bending down into the flap on the locked door. He sprayed gas . . . into my mouth" and "lots of it went down my throat into my stomach and my mouth and throat and stomach was on fire" (*id.*).

The plaintiff claims that a nurse checked him out, and when he was walking out, "the gas and liquid from my stomach burning came and I spit it out." The plaintiff claims that Lt. Richardson then "rushed" him and picked him up "slamming [him] to the floor" (*id.*). The plaintiff claims that he was knocked out, and when he woke up, Lt. Richardson was slamming his head into the floor and punching him in the face (*id.*).

The plaintiff alleges he was weak from the hunger strike, and "the gas put blisters on my tongue and in my throat" (*id.* at 6). He claims he was in lockup for six months before "they" saw the blisters on his tongue and throat (*id.*). The plaintiff asserts he retained "this lawyer Robert Butcher" who "took picture of my face, eye, ribs, and knees" (*id.*). The plaintiff alleges that he tried to press charges against Richardson, but "these people blocked everything they are corrupt" (*id.*). The plaintiff claims that he needs orthopaedic shoes and surgery on his knees and feet and that he now has migraine headaches. He also asserts "they gave me the wrong medicine high blood pressure medicine," and "I had water in my feet, arms, legs, shoulders and lost my vision and kept passing out" (*id.*).

The plaintiff alleges "that he was brutally assaulted by Lt. Franklin Richardson, Jr., and the officers and medical attempted to hide or cover up the excessive force and assault and the spraying of gas down plaintiff's throat. This assault happened while plaintiff was in handcuffs" (*id*. at 9). The plaintiff claims he has suffered "mental and emotional injury and physical injury." He asks "this Honorable Court to clean this element up here" and seeks "5 Million compensatory damages, 5 Million punitive damages" (*id.* at 10). The plaintiff further states, "Also, I want my right eye fixed, I want my throat and tongue stomach fixed from the gas that burned my mouth, throat and stomach." He asserts, "I still haven't

gotten my vision back where it was before the beating." and that he knows he is "dying from the beating and the medicine that they were giving me" (*id*.).

The plaintiff further states that he was given "blood pressure medicine and some other medicine the nurse didn't know about." (*id*. at 11). The plaintiff asserts "it was swelling me up in the feet, arms and shoulders. It was taking my vision. I couldn't see for about 3 hours." "But before I was trying to get to medical. I fell out throwing up. I could walk. My feet swelled up on me. My head was about to bust. My feet was so big I couldn't wear shoes. My ankles, shoulders and elbows were full of some type of water." The plaintiff asserts the letter he sent to his lawyer was not mailed (*id*.).

### *Grievances*

On March 15, 2010, the plaintiff filed grievance Lee CI #0754-10 (doc. 55-9, grievances at 1). The plaintiff filed a duplicate Step 1 grievance on March 19, 2010 (*id.* at 2). Following a hearing on March 23, 2010, the plaintiff filed a Step 1 grievance on March 24, 2010 (*id.* at 3). After the grievance was returned to him, the plaintiff failed to resubmit the grievance within five days and therefore abandoned his appeal.

### *Prior Litigation*

On August 2, 2011, attorney Robert J. Butcher, who represented the plaintiff, filed an action entitled *Timothy Green vs. South Carolina Department of Corrections*, Docket No. 2011-CP-31-187, in the Lee County Court of Common Pleas (doc. 55-2, state court comp.). In the state court action, the plaintiff asserted that Lt. Franklin Richardson assaulted him on March 11, 2010 (*id*. at 5). The plaintiff alleged causes of action against sole defendant SCDC for assault; battery; gross negligence and negligence *per se* for failing to supervise employees and insure that they do not physically harm or use excessive force on inmates, failing to train its employees in proper use of force and chemical

munitions, and for failing to insure that employees are not violent and dangerous; and gross negligence and negligence *per se* for failing to supervise medical staff to insure injured inmates are provided proper treatment, failing to train employees to properly treat injured inmates, and failing to provide medical attention and treatment to the plaintiff (doc. 55-5, order at 3; doc. 55-2, state court comp. at 3-10). In the state court action, defendant SCDC filed the affidavits of Karen Cooper, RN, (doc. 55-3, Cooper aff.) and Lt. Richardson (doc. 55-4, Richardson aff.). On February 28, 2014, the state court granted summary judgment to the SCDC on all causes of action (doc. 55-5, order at 11). The plaintiff appealed that dismissal, which is currently pending before the South Carolina Court of Appeals. The plaintiff acknowledges the state court action was dismissed with prejudice at summary judgment and that the dismissal is pending on appeal (doc. 1, comp. at 1).

***Defendants' Evidence***

The plaintiff's encounter actually occurred on March 11, 2010, according to SCDC records and the plaintiff's own grievances (*see* doc. 55-3, Cooper aff.; doc. 55-4, Richardson aff.; doc. 55-6, incident report; doc. 55-9, grievances). The incident report states that, during a routine search, contraband (a Walkman) was found in the plaintiff's pants (doc. 55-6, incident report). The plaintiff became noncompliant and threatening. After he failed to cease his behavior, pepper spray was administered to gain control of the plaintiff (*id*.; doc. 55-4, Richardson aff. ¶¶ 2-5). When a nurse came to evaluate the plaintiff, he again became noncompliant, lunged toward Lt. Richardson, and spat on him (doc. 55-6, incident report; doc. 55-3, Cooper aff. ¶¶ 4-6; doc. 55-4, Richardson aff. ¶ 6). Subsequently, Lt. Richardson took the plaintiff to the ground and restrained him (doc. 55-6, incident report; doc. 55-3, Cooper aff. ¶¶ 6-7; doc. 55-4, Richardson aff. ¶ 6). On March 23, 2010, the plaintiff was convicted of threatening an employee, striking an employee,

refusing or failing to obey orders, and possession of contraband (doc. 55-7, disciplinary report and hearing records). The plaintiff did not appeal his administrative conviction.

According to SCDC medical records, the plaintiff was evaluated and treated after the March 11, 2010, encounter. The plaintiff had a shower and went to medical. He told the nurse that he had asthma, but it was determined that he had a history of peptic ulcer rather than asthma. The plaintiff had a lump on his head above his right eye (doc. 55-8, med. summary at 52). The plaintiff has visited sick call numerous times through February 14, 2014, the date of the state court dismissal (*see id.* at 1-52).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not

rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Summary judgment is not "a disfavored procedural shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

The defendant first argues that the plaintiff's claims are barred by *res judicata* and/or collateral estoppel. The undersigned agrees. "Federal courts are bound by 28 U.S.C. § 1738 (2012) to apply the law of the rendering state to determine the extent to which a state court judgment should have preclusive effect in a federal action." *RFT Managment Co., LLC v. Powell*, No. 14-1488, 2015 WL 1567854, at *1 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)). In South Carolina, the doctrine of *res judicata* will bar a claim when "(1) the identities of the parties are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior adjudication of the issue by a court of competent jurisdiction." *Catawba Indian Nation v. State*, 756 S.E.2d 900, 907 (S.C. 2014). Moreover, *res judicata* "bars plaintiffs from pursuing [a claim in] a later suit where the claim . . . could have been litigated" in a prior suit, and "the claim[ ] arise[s] out of the same transaction or occurrence that was the subject of [the] prior action between [the same] parties." *Id.* at 906 (citing *Plum Creek*

*Dev. Co. v. City of Conway*, 512 SE.2d 106, 109 (S.C. 1999)). Under South Carolina law, "[c]ollateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue that was decided in a previous action, regardless of whether the claims in the first and subsequent lawsuits are the same." *Carolina Renewal, Inc. v. S.C. Dep't. of Transp*., 684 S.E.2d 779, 782 (S.C. Ct. App.2009). "The party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Id*. (citation omitted).

The plaintiff pursued different causes of action against a different defendant (SCDC) in the state court lawsuit; however, "under South Carolina law, the doctrine of *res judicata* extends to include privy parties." *Wilson v. Primerica Life Ins. Co.,* No. 2006-UP-365, 2006 WL 7286971, at *1 (S.C. Ct. App. Oct. 24, 2006) (citing *Nunnery v. Brantley Constr. Co., Inc*.,345 S.E.2d 740, 743 (S.C. Ct. App.1986)). Privity "means one so identified in interest with another that he represents the same legal right. One in privity is one whose legal interests were litigated in the former proceeding." *Richburg v. Baughman*, 351 S.E.2d 164, 166 (S.C. 1986) (citations omitted). Furthermore, "[w]hile the traditional use of collateral estoppel required mutuality of parties to bar relitigation, modern courts recognize the mutuality requirement is not necessary for the application of collateral estoppel where the party against whom estoppel is asserted had a full and fair opportunity to previously litigate the issues." *Snavely v. AMISUB of S.C., Inc*., 665 S.E.2d 222, 228 (S.C. Ct. App.2008). The defendants in this action and the SCDC are in privity for the purposes of the plaintiff's claims as they represent the same legal interests. *See James v. Wright*, C.A. No. 1:13-1438-TMC, 2014 WL 2612487, at *4 (D.S.C. June 9, 2014) (finding

individual defendant SCDC employees and the SCDC were in privity for res judicata purposes).

The plaintiff's current claims arise out of the same occurrence that was the subject of the prior state court action, and the plaintiff clearly had the opportunity to bring his current claims in the prior state court action. Moreover, while the state action was brought under the South Carolina Tort Claims Act ("SCTCA") and the plaintiff now brings constitutional claims pursuant to Section 1983, the identity of the subject matter "rests not in their forms of action or the relief sought, but rather, in the combination of the facts and law that give rise to a claim for relief." *Id.* at *5 (finding identity of the subject matter in state court action alleging claims under the SCTCA and federal Section 1983 action) (citing *Plum Creek*, 512 S.E.2d at 109-10)). These issues were decided adversely to the plaintiff, and he may not now collaterally attack the outcome of the state court claims. In granting summary judgment, the state court judge specifically found that plaintiff's allegations were supported only by his own testimony, and "ample independent evidence [existed] to demonstrate that the Plaintiff's claims are false" (doc. 55-5, order at 5). Moreover, the court found that "the overwhelming evidence supports the facts as contained in Lieutenant Richardson's Affidavit" (*id.*). The court found that Lt. Richardson deployed chemical munitions in accordance with SCDC policy when the plaintiff "failed to comply" after being "requested numerous times to stop acting erratically and to calm down" (*id.* at 7). With regard to the plaintiff's medical claims, the state court found that the "medical notes show Plaintiff was provided numerous medical examinations and medical attention almost weekly," and "Plaintiff's personal opinion notwithstanding, nothing in the evidence and exhibits before the Court gives rise to a genuine issue of fact as to whether anyone was deliberately indifferent to Plaintiff's serious medical needs" (*id.* at 10).

Based upon the foregoing, *res judicata* bars the plaintiff's claims.[1]

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 55) be granted. Should the district court adopt this recommendation, any pending nondispositive motions will be rendered moot. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

July 6, 2015
Greenville, South Carolina

---

[1] As the undersigned finds that the plaintiff's claims are barred by *res judicata*, the defendants' remaining arguments in support of summary judgment will not be addressed.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).